IBRQDELc

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA

            v.                          18 CR 802 (CM)
                                        Conference
PEDRO VICIOSO DeLIMA, VICTOR
HIDALGO, DAVID PEREZ, JACINTO
GARCIA, SIXTO VANCAMPER-BRITO,
CESAR GIL, JUAN GIL CABRAL,
ANTHONY BELLIARD, MAYRA
MONSANTO, RICKY ROSA, MINERVA
VENTURA, MARK VIERA, ROMEO
SUNCAR, ANTHONIO YERIS ALMONTE

              Defendants
------------------------------x
                                        New York, N.Y.
                                        November 27, 2018
                                        4:15 p.m.

Before:

                HON. COLLEEN MCMAHON

                                        District Judge


                    APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
DOMINIC A. GENTILE
ALINE FLODR
     Assistant United States Attorney


ANTHONY L. RICCO
     Attorney for DeLima

SAM SCHMIDT
     Attorney for Defendant Hidalgo

KEN WOMBLE
     Attorney for Defendant J. Garcia
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

IBRQDELc

APPEARANCES CONTINUED:

KARLOFF COMMISSIONG
    Attorney for Defendant Vancamper-Brito

JOHN ZACH
    Attorney for Defendant C. Gil

MICHAEL SPORN
    Attorney for Defendant Cabral

LAW OFFICE OF PETER BRILL
    Attorney for Defendant Belliard
MARK GUTMAN

CESAR de CASTRO
    Attorney for Defendant Monsanto

EDWARD SAPONE
    Attorney for Defendant R. Rosa

SUSAN KELLMAN
    Attorney for Defendant Ventura

LAW OFFICE OF ANTHONY CECUTTI
    Attorney for Defendant Viera
KEN WOMBLE

JESSE SIEGEL
    Attorney for Defendant Suncar

LISA SCOLARI
    Attorney for Defendant Almonte

-Also Present-
DAVID MINTZ, Interpreter (Spanish)

IBRQDELc

|    |                                                                                    |
|----|------------------------------------------------------------------------------------|
| 1  | (Case called)                                                                      |
| 2  | DEPUTY CLERK:  Counsel, your appearances and who you                               |
| 3  | represent.                                                                         |
| 4  | MS. FLODR:  Good afternoon, your Honor.  Aline Flodr                               |
| 5  | and Dominic Gentile on behalf of the United States.                                |
| 6  | THE COURT:  Good afternoon.                                                        |
| 7  | MR. SCHMIDT:  Good afternoon, your Honor.                                          |
| 8  | Sam Schmidt on behalf of Victor Hidalgo, who is seated                             |
| 9  | in the wheelchair next to me.                                                      |
| 10 | THE COURT:  Mr. Schmidt.                                                           |
| 11 | MS. SCOLARI:  Good afternoon, your Honor.  Lisa                                    |
| 12 | Scolari for Antonio Almonte in the jury box.                                       |
| 13 | THE COURT:  Ms. Scolari.                                                           |
| 14 | MS. KELLMAN:  Susan Kellman for Minerva Ventura seated                             |
| 15 | in the last row.                                                                   |
| 16 | THE COURT:  Ms. Kellman.                                                           |
| 17 | MR. ZACH:  John Zach for Cesar Gil, who is third over                              |
| 18 | in the second row in the jury box.                                                 |
| 19 | THE COURT:  Mr. Zach.                                                              |
| 20 | MR. SIEGEL:  Jesse Siegel for Romeo Suncar who is --                               |
| 21 | he is waving at you.                                                               |
| 22 | THE COURT:  Mr. Siegel and Mr. Suncar, good afternoon                              |
| 23 | to you both.                                                                       |
| 24 | MR. SAPONE:  Edward Sapone for Ricky Rosa, first row,                              |
| 25 | first seat.                                                                        |

            MR. GUTMAN:  Mark Gutman standing in for attorney of
record Peter Brill for Anthony Belliard in the first row.
            THE COURT:  Mr. Gutman.
            MR. WOMBLE:  Kenneth Womble for Jacinto Garcia, the
second closest to you in the first row.
            And, additionally, I'm standing in for Anthony Cecutti
for Mr. Viera, who is next to Mr. Garcia in the first row.
            THE COURT:  Mr. Womble.
            MR. SPORN:  Michael Sporn for Juan Gil Cabral in the
jury box second from the end.
            THE COURT:  Mr. Sporn.
            MR. de CASTRO:  Cesar de Castro for Mayra Monsanto
seated in the first row of the audience.
            THE COURT:  Mr. de Castro.
            MR. RICCO:  Good afternoon, your Honor.
            Anthony Ricco for Pedro Vicioso DeLima, who is seated
all the way to the right in the second row.
            THE COURT:  Mr. Ricco.
            MR. COMMISSIONG:  Good afternoon, your Honor.  Karloff
Commissiong for Mr. Sixto Vancamper-Brito in the second row
closest to your Honor.
            THE COURT:  Mr. Commissiong.
            Well, hello everyone, literally.
            OK, I do know a little about this case because I had a
bail app for one of the defendants, but since everyone is here,

IBRQDELc

1   can we put on the record what this case is about?
2           MS. FLODR:  Yes, your Honor.  As alleged in the
3   indictment, all of the defendants in this case were
4   participating in a drug-trafficking organization that operated
5   principally out of a building in Washington Heights, 501 West
6   167th Street.  As alleged in the indictment, this was a
7   conspiracy that spanned from July 2016 through on or about
8   October 2018.  During the course of the conspiracy, the
9   drug-trafficking organization we allege trafficked over
10  85 kilograms of heroin through this drug-trafficking building
11  and the surrounding environment, and much of that was laced
12  with fentanyl.
13          Comes as no surprise that this DTO had a hierarchy.
14  At the top of the hierarchy is the same person who sits at the
15  top of the indictment; that would be Pedro Vicioso DeLima.
16          He had a second in command, and that would be Mr.
17  Victor Hidalgo, the second person listed on the indictment.
18          Underneath those two were a series of managers.
19          Underneath the managers were the pitchers, who
20  participated in the hand-to-hand transactions that occurred in
21  the drug building.
22          In addition to having the actual distributors of the
23  heroin, there were also lookouts as well as doormen that
24  controlled complete access to the building.
25          The one outstanding person on this indictment who

1   wasn't either a doorman or a lookout is Mr. Antonio Yeris
2   Almonte, who served as the superintendent of the building
3   itself, and he facilitated the DTO's complete access to the
4   building and also helped inform the DTO members as to who was
5   entering the building as well as giving them full access to
6   parts of the building that other residents would not normally
7   have access to.
8        In addition to the amount of heroin that this
9   drug-trafficking organization was responsible for, some of that
10   heroin ended up being associated with several fatal and
11   non-fatal overdoses during the course of this conspiracy.  At
12   all of those overdose incidents, there were glassines found
13   with the drug-trafficking organization stamps of choice for the
14   period of time.
15        One of those examples is listed in the indictment.
16   That was March 29 of 2018 where at a fatal overdose site there
17   were glassines marked with the stamps Ras Baraka and Porsche,
18   and there was also a slip of paper with the name and phone
19   number of one of the defendants in this case.
20        All of the defendants were charged by an indictment
21   with a single count of conspiracy, and that was turned up by
22   the grand jury on October 31, 2018.  Most of the defendants
23   were arrested either on November 7 or November 8, and most of
24   them were arraigned before Magistrate Judge Lehrburger on
25   November 8 of 2018.

1       Cesar Gil and Ricky Rosa were subsequently writted and
2  arrested and arraigned on November 14, and time has been
3  excluded off the speedy trial clock from each of those
4  arraignments until today.
5       THE COURT:  OK.  So having heard that, what are we
6  talking about in terms of discovery that the government needs
7  to produce.
8       MS. FLODR:  Your Honor, the discovery in this case is
9  voluminous.  There were nine wires.  There are over 6,800
10 pertinent calls across those wires, and at least 200 hours of
11 pertinent calls.  Most of those pertinent calls are in Spanish.
12      There were also premises search warrants that were
13 conducted, as well as the results of those premises search
14 warrants.  GPS warrants on several of the defendants' phones
15 there were several triggerfish that were received in this case,
16 car tracking warrants, and the government is also planning on
17 completing phone search warrants for several phones seized on
18 the day of the takedown.
19      In addition to the bulk of that evidence, there is
20 evidence of over 25 controlled buys surveillance videos of some
21 of activities at the drug building.
22      THE COURT:  How much surveillance video?
23      MS. FLODR:  Your Honor, I don't have a specific number
24 for that, but I do -- it spans --
25      THE COURT:  That's the pertinent datum right now.  How

1  much surveillance video are we talking about?  Are we talking

2  about terabytes of surveillance video?

3           MS. FLODR:  No, your Honor, it's not terabytes.  I

4  would say it's in the -- probably at least 50 gigabytes of

5  surveillance video.

6           THE COURT:  Most of which will be of no relevance

7  whatsoever, but that's not very helpful to the defendants.

8           MS. KELLMAN:  Keeps us busy.

9           THE COURT:  It does, Ms. Kellman, I agree.

10          MS. FLODR:  And then the last, I guess, large bit of

11 evidence would be subpoena returns from phone companies,

12 financial institutions and other business enterprises.

13          THE COURT:  So what are we going to do about producing

14 discovery?

15          MS. FLODR:  Your Honor, we have been in contact with

16 defense counsel about a protective order.  It is almost fully

17 signed at this point.  We expect to hand that up to your Honor

18 at some point with -- or submit it to your Honor for

19 consideration within the week.  And we expect to produce the

20 bulk of the T3 related evidence by Monday, as soon as that

21 protective order is in place.

22          MR. de CASTRO:  Judge, if --

23          THE COURT:  Mr. de Castro.  Don't interrupt.  Do me a

24 favor.  I will let you talk.  I will let you address anything

25 you want, and you have to be at a mike but not now.  Let her

IBRQDELc

1    finish.

2              MR. de CASTRO:  It was on this topic.

3              THE COURT:  It may be on this topic, but it's not your

4    turn.  We run this kind of like kindergarten.  We take our

5    turns.

6              MS. FLODR:  And, your Honor, we believe we can produce

7    the substantial majority of all of the discovery, Rule 16

8    discovery in this case within four weeks.

9              THE COURT:  Now, is Mr. de Castro speaking for the

10   group?  Or is Mr. de Castro speaking for his client?  What's

11   the --

12             MS. KELLMAN:  For the group, your Honor.

13             THE COURT:  Thank you.

14             Mr. de Castro, good afternoon.

15             MR. de CASTRO:  Good afternoon.  Thank you, your

16   Honor.

17             So the government had indicated to us that they needed

18   about a terabyte from each defense counsel in order to produce

19   the discovery.  We discussed with them, and, of course, we want

20   to make a formal application if the Court is amenable to it for

21   a discovery coordinator I think.

22             THE COURT:  Sounds like a great idea.

23             MR. de CASTRO:  I need to see if Ms. Greenwood is

24   available or the other discovery coordinators we've worked with

25   are available for the appointment.  I will do that this week.

IBRQDELc

THE COURT:  Fear not, I will so order that.

MR. de CASTRO:  In terms of if the Court wants to discuss dates.

THE COURT:  I'll discuss anything you guys want.

MR. de CASTRO:  So obviously we don't have the material, but the government has -- that's a lot of work.

THE COURT:  It's a lot of stuff.

MR. de CASTRO:  So we were thinking of a three-month date, so we could come back to you and talk to you about where we all are.

THE COURT:  That's what I was thinking too.  We have been together for 20 years now.  We almost always think alike.

So what we're talking about is the last week in February, Mr. O'Neill?

DEPUTY CLERK:  Tuesday, the 26th, 4:00.

THE COURT:  Are we picking a jury that day?

DEPUTY CLERK:  We are.

THE COURT:  Can we not do it that day?

DEPUTY CLERK:  The 27th, or what's the Monday?  Is it a holiday?

THE COURT:  Monday is the day I get back.  We could do it on Monday.  I could do it on Monday, but I can't pick a jury on Monday.

DEPUTY CLERK:  Let's do it the 28th, Thursday, at 4:00.

1     THE COURT:  Let's do it at 4:30 because I will be on
2  trial.  And I assume everybody wants me to exclude time?
3     Time is excluded in the interest of the justice and
4  with the consent of defendants, their interest in a speedy
5  trial being outweighed by the need for the government to
6  produce discovery and defense counsel to figure out how to get
7  it reviewed.  I will sign the protective order.  I will sign an
8  order appointing discovery coordinator for this case.  OK?
9     Who else has something interesting to say today?
10     MS. KELLMAN:  Judge, just a question in terms of bail
11  applications.  Does the Court want them made directly to you or
12  to the magistrate?
13     THE COURT:  You know, you may as well make them to me
14  because they're going to get to me anyway if you aren't happy
15  with what the magistrate says.
16     MS. KELLMAN:  Thank you, Judge.
17     THE COURT:  You could talk to Mr. Sapone; he's already
18  done one.  Anybody else?  Such silence.  Well, we are just
19  beginning.  We are just beginning.  I rather imagine I will
20  hear a lot more from you.  So I will see you all in February.
21  Thank you very much.
22     (Adjourned)
23
24
25