UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

Pedro Vicioso De Lima,

               Defendant.

18-CR-802-01 (CM)

---

### DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

McMahon, J.:

On July 13, 2021, Pedro Vicioso De Lima was sentenced principally to a term of imprisonment of 180 months, for his involvement as the leader of a heroin distribution conspiracy.

Before the Court is a *pro se* motion that De Lima characterizes as a petition "For Compassionate Release/Reduction in Sentence/Long Sentence." Def. Mtn. at 1. De Lima's motion is rambling, full of non-sequiturs, and frequently citing inapplicable statutes and legal authority. However, his essential argument and request is quite clear:

> Mr Pedro Vicioso De Lima is a nonviolent and First Time Offender. He is not Leader or a supervisor, He played a minimal role in this Conspiracy. His characteristics and rehabilitation are well accounted for. He does not pose any more danger to the community. . . . Pedro Vicioso De Lima, prays this Honorable Court finds merit in this request for Compassionate Release/Reduction and GRANTS a Reduction In sentence in the interest of Justice.

*Id.* at 5-6.

The Government opposes the motion.

1

Background

On December 17, 2019, De Lima pleaded guilty to distribution and possession with intent to distribute 1 kilogram and more of heroin in violation of 21 U.S.C. 841(b)(1)(A). On July 13, 2021, Pedro Vicioso De Lima was sentenced to a term of imprisonment of 180 months. Notwithstanding an appeal waiver in his plea agreement with the Government, De Lima appealed his conviction—the Second Circuit dismissed his appeal. (Second Circuit Mandate, ECF Doc. 289).

On November 22, 2023, De Lima filed a motion asking the Court to reduce his sentence, pursuant to Amendment 821 to the United States Sentencing Guidelines Manual. De Lima argued that he was entitled to a reduction under the new amendment because he had zero criminal history points prior to his conviction in the present case. The Court denied the motion. Although De Lima did, indeed, have zero criminal history points prior to his conviction in this case, he was not entitled to a reduction under the amendment because (1) his Guidelines calculation included a disqualifying "Aggravating Role Enhancement," pursuant to U.S.S.G. §3B1.1., and (2) even if he were eligible for a reduction in his Guidelines calculation, the Court would not have the authority to reduce his sentence because his amended Guidelines under the Amendment would have been 188-235 months, which is greater than the 180 months' sentence the Court originally imposed. Under U.S.S.G. § 1B1.10(b)(2)(A), a court is not permitted to reduce a defendant's term of imprisonment "to a term that is less than the minimum of the amended guideline range."

On September 10, 2024, De Lima filed the instant motion for compassionate release.

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release. District courts may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). However, any reduction of a defendant's sentence must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §3582(c)(1)(A). Those applicable policy statements are set forth in the United States Sentencing Guidelines § 1B1.13. *See United States v. Cromitie*, No. 09 CR 558-01 (CM), 2024 WL 216540, at *4 (S.D.N.Y. Jan. 19, 2024) ("On November 1, 2023, the Sentencing Commission amended the Guidelines so that it now provides guidance for courts in deciding petitions initiated by both BOP and defendants.").

Of course, a court contemplating a defendant's release pursuant to § 3582(c)(1)(A)(i), must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

De Lima Has NOT Exhausted His Administrative Remedies with the BOP

There is no indication in De Lima's motion that he ever attempted to exhaust his administrative remedies within the Bureau of Prisons. And the Bureau of Prisons represents that FCI Fort Dix has not received a compassionate release request from the defendant, and the defendant has not claimed that he made such a request with the BOP. (Govt. Response at 2). Accordingly, De Lima has not exhausted his administrative remedies and is precluded from filing a motion for compassionate release under Section 3582(c)(1)(A) with the Court.

Present Motion Before the District Court

Even if De Lima had exhausted his remedies with the BOP, his motion would fail nonetheless on the merits.

Most of De Lima's arguments in his current motion, including his arguments about conditions of confinement during the COVID-19 pandemic, were actually presented to, and considered by the Court at the time of his sentencing in 2021. *See, e.g.*, Vicioso de Lima Sentencing Tr. 15:4-21 (argument from defense counsel for sentencing variance based on "what he has suffered over the past 18 months"), 22:21-24:8 (statement by defendant focused primarily on COVID-19 conditions of confinement); and 26:19-27:9 (Court explaining that it would "vary somewhat from the guidelines which I'll apply, solely as a result of the COVID-related

experience that you have endured"). These recycled arguments do not now form an extraordinary and compelling basis for reducing De Lima's sentence.

The only new argument in favor of release that De Lima has raised is his efforts at rehabilitation during incarceration, including taking educational courses, working, and not having disciplinary infractions. *See* Def. Mot. at 3-5. While the Court credits De Lima's claim of rehabilitation, "rehabilitation alone cannot meet the [extraordinary and compelling] statutory standard." *See United States v. Douglas*, No. 04-CR-1065 (CM), 2024 WL 3293765, at *3 (S.D.N.Y. July 2, 2024). Since De Lima has made no showing of another extraordinary and compelling reason warranting a reduction in his sentence, his motion necessarily fails.

### The § 3553 (a) Factors

Even if De Lima had demonstrated an "extraordinary and compelling reason" to reduce his sentence, the Section 3553(a) factors continue to counsel against release.

De Lima was the leader and head of a prolific and long running drug-trafficking organization ("DTO") that took over and terrorized an apartment complex in upper Manhattan. In less than one and a half years, the DTO distributed approximately 85 kilograms of fentanyl-laced heroin worth over $12,000,000. (PSR ¶ 17). Perhaps more troubling than the staggering quantity of drugs that De Lima's DTO distributed is the lethality of the drugs distributed— drugs sold by the DTO had been connected to multiple fatal and nonfatal suspected overdoses. (PSR ¶¶ 11-13). As I explained when sentencing De Lima:

> For the last two years, I have had the misfortune, because I've become very familiar with what went on for many years at 501 West 167th Street here in Manhattan. Many families lived in that building, good people who deserved to live in safety and security, comfort and with respect and who, instead, were terrorized every single day for a period of years, two or three that I know about for certain -- I suspect there were more -- because a drug gang had taken over their building, controlled entry, exits, littered their hallways

with products and with unsavory people, eliminated their sense of security in their homes, made some of them prisoners in their own apartments.

As you were describing the way things have been for you for the last year or two, it sounded remarkably similar, without the Covid, to the way those people lived in a building that you controlled. You controlled. You were in charge of what was going on there for years. I don't know where the money went or whether there was some overlord above you who took a large quantity of it, but I do know that your lovely family was not living at 501 West 167th Street. They were living in Bergenfield, New Jersey, a town that Niche.com refers to as "one of the best places to live in New Jersey;" a town that Neighborhoodscout identified as "the second safest community in the United States, with a population of 25,000 or more." The Bergenfield High School that your brilliant talented son goes to is ranked among the top three percent of high schools in the United States by U.S. News and World Report. You can find all of this out by Googling Bergenfield, New Jersey. A community in which you owned a home that was purchased with money that came from somewhere. You had no employment that we've been able to uncover, certainly not your purported $500-a-week job, on occasion, working as an auto mechanic. The home has been examined by probation and found to be a nice house, with a fenced yard, without any security concerns at all. Not a luxurious place to live, but a comfortable place to live, in a good community.

And I contrast what you gave your family with what were undoubtedly the proceeds of your drug dealing, with what you did to that building and the people who lived there and to the neighborhood. I note that your children are accomplished and well educated and that you, yourself, have denied having any kind of drug problem at all, but you did not hesitate to recruit drug addicts, pathetic, desperate individuals, to sell and deliver drugs, to act as guards and lookouts in and around that building so that they could feed their own habit while you kept your family safe. Mr. Ricco painted what I believe to be an accurate picture of a loving, devoted family man. I speak today for the rest of those families. I speak for the families who lived at 501 West 167th Street, the building you terrorized, the building you turned into the center of a major drug operation, the building out of which you knowingly dealt death. And I say that my job today is not to forgive but to punish. . . .

You argue that you should be sentenced below the guidelines because of, among other things, the miserable conditions in which you have been held for the last year and almost a half. And I am second to no one in deploring the performance of the Bureau of Prisons during this unprecedented outbreak of disease. I'm very sorry that you got Covid, and I am sure that your treatment was less than what we would expect in a civilized society. I'm glad that you recovered. There are now vaccines available to protect

you. And while I will vary somewhat from the guidelines which I'll apply, solely as a result of the Covid-related experience that you have endured, I won't vary from them very much because that experience is outweighed in every particular by what you did, by the misery that you caused, by the havoc that you wreaked in the lives of hundreds of hundreds of people. I cannot imagine how difficult it must be for your family to sit here today, not only because they love you and don't want to see you go to jail for a long time, but because they know in their hearts -- they're good, intelligent people -- they know what supported their safe lifestyles, their good education.

I'm not sentencing you for money laundering. The New Jersey lawyers can take care of that, and the New Jersey judge can sentence you for that if, in fact, you are found guilty of that crime. But the fact that you have turned over as ostensible proof of having made a living, paperwork showing your affiliation with the building where you were a drug kingpin that predates the date of the government's allegations in this complaint, pretty much tells me everything I need to know about how you've lived your life for a good long while. You will live for 15 years very differently.

I have considered all of the section 3553(a) factors, the nature and the circumstances of the offense, and the defendant's leadership role in it, and the havoc that it has wreaked in the community are the factors that are salient to me, and only a sentence, an extensive, above-the-mandatory-minimum sentence of incarceration is sufficient to do justice in this case and necessary to punish you for the terrible crime that you have committed. I speak for the families of 501 West 167th Street. They are the families that matter to me today.

Will you stand, sir. I have read the presentence report. I adopt as my findings its description of the offense and the offense conduct; its calculation of the total offense level, which is 38. The defendant's criminal history category is I, which is remarkable on your part, sir. I accept and adopt as the offender characteristics the information set out in the presentence report beginning at paragraph 85. I have considered, as I said, all of the section 3553(a) factors. As well, I'll be issuing a variance sentence, the sole exclusive reason for that will be the unusual conditions of incarceration that the defendant has previously endured. There is no reason for him to fear Covid anymore because he can be vaccinated against it. Under docket number 18 CR 802, at a total offense level of 38 and a criminal history category of I, I hereby sentence you Pedro Vicioso DeLima to be remanded to the custody of the Attorney General of the United States and the Bureau of Prisons for a term of 180 months, and to serve a term of ten years' supervised release upon your release.

(Sentencing Transcript Doc. 259 at 24-29).

The motion for compassionate is denied.

January 27, 2025

Colleen McMahon
District Court Judge